about the deposits, or made any declaration that he was thereby giving her the amounts on deposit in the banks. Her testimony shows that during his life the bank books were kept in the box into which he put them after making the deposits, and in which he kept his other books and papers. She did not draw any money out of the banks during his life, nor did she exercise any control or dominion over the deposits.

She also testified that he opened an account in the Harlem Savings Bank in their joint names, and that she retained that bank book in her possession, "because it belonged to me." This indicates that she realized that the money on deposit in the other banks did not belong to her while the decedent lived. The decedent, therefore, did not make a valid gift inter vivos of the money deposited with the Excelsior Savings Bank and the Metropolitan Savings Bank to Mary Freischlader. Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900; Matthews v. B'klyn Sav. Bank, 208 N. Y. 508, 102 N. E. 520. As the trusts were revocable during the life of the decedent, the money passed to Mary Freischlader upon his death as a gift intended to take effect at or after his death, and is therefore subject to a transfer tax. Matter of Barbey (Sur.) 114 N. Y. Supp. 725; Matter of Halligan, 82 Misc. Rep. 30, 143 N. Y. Supp. 676.

---

(85 Misc. Rep. 679)

### In re CROSBY'S ESTATE.

(Surrogate's Court, New York County. May, 1914.)

1. TAXATION (§ 867*)—TRANSFER TAX—PROPERTY SUBJECT—INTANGIBLE PROPERTY OF NONRESIDENT.

The intangible personal property of a decedent, not a resident of the state at the time of death, is not subject to a transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1681–1684; Dec. Dig. § 867.*]

2. DOMICILE (§ 5*)—HUSBAND AND WIFE—EFFECT OF SEPARATION.

Where a husband and wife lived separately for 26 years, maintaining separate homes in different states, and paying their expenses from their individual property, the wife acquired a domicile apart from that of her husband, though no decree of separation was procured or grounds therefor shown.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 24–35; Dec. Dig. § 5.*]

In the matter of the appraisal of the estate of Harriet V. R. Crosby, deceased, under the Transfer Tax Law (Consol Laws, c. 60, §§ 220–245). Decreed according to opinion.

Frederic N. Watriss, of New York City, for ancillary executors.
John S. Jenkins, of New York City, for State Comptroller.

COHALAN, S. [1] The appraiser designated by this court to appraise the estate of the decedent under the provisions of the Transfer Tax Law having reported that conflicting allegations as to the domicile of the decedent were made before him, the matter was remitted to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

this court for the purpose of having the question of domicile decided by the surrogate. . This question is material, because, if the decedent was not a resident of this state at the time of her death, that part of her estate. consisting of intangible personal property is not subject to a transfer tax.

[2] The only witness examined before me was Stephen Van R. Crosby, a son of the decedent. He testified that his father was an officer in the United States Army at the time he was married to the decedent; that he subsequently resigned from the army and was appointed Governor of Montana about the year 1883; that the decedent resided with him for some time while he was Governor of Montana, but that in 1884 she left him and came to Morristown, N. J., where she rented a house in her own name and where she lived for a number of years; that she subsequently moved to Charlestown, W. Va., where she resided for about 13 years until her death. The witness further testified that, from the time she left her husband in Montana until the date of her death, her husband did not live with her or contribute to her support or to the support of their children. Her husband had his domicile in this state at the time of her death. It. is contended by the state comptroller that her husband's domicile was her domicile, while the executor contends that she acquired an independent domicile in West Virginia. The decedent did not obtain a judicial decree of separation from her husband and there is no evidence that he was guilty of such misconduct as would entitle her to obtain such a decree. In Hunt v. Hunt, 72 N. Y. 242, 28 Am. Rep. 129, it was said that a wife may acquire an independent domicile when she is living apart from her husband by virtue of a judicial decree of separation when the conduct of the husband has been such as to entitle her to an absolute or limited divorce. This doctrine was extended in Matter of Florance, 54 Hun, 328, 7 N. Y. Supp. 578, appeal dismissed 119 N. Y. 661, 23 N. E. 1151, where it was held that a woman acquired a separate domicile, although no judicial decree of separation was obtained, and there was no proof of such misconduct as would entitle her to a limited or absolute divorce. The court says in its opinion that the parties agreed to separate, but it is not clear from the report of the case whether the agreement was oral or written. In Saperstone v. Saperstone, 73 Misc. Rep. 631, 131 N. Y. Supp. 241, it was held that the wife acquired an independent domicile, although no judicial decree of separation had been rendered. In the matter under consideration there is no proof of an agreement to separate, but there is proof. of the fact of actual separation. There is proof that, from the time when the decedent left her husband's home in Montana until the date of her death, he never visited at her residence except once, and that was upon the occasion of their daughter's marriage. No mere agreement of separation could be more effective in keeping them apart than the voluntary arrangement or understanding which resulted in their maintaining separate homes and paying their individual expenses from their individual property for a period of about 26 years. Whatever the cause of the disagreement which resulted in the actual separation, the latter seems to have been as effective as if it were evidenced by a judicial decree. If such a decree had been entered, there would be no question, under the authorities in this

state, of the right of the wife to acquire an independent domicile. It would seem to be subordinating substance to mere form to hold that a separation which lasted 26 years, although not evidenced by a judicial decree, should be less effective in affording the wife the right to acquire an independent domicile than if such agreement had been incorporated in a formal written instrument. The publicity incident to a judicial separation might well induce a woman of delicacy and refinement to refrain from applying for it, but, when the separation is as effectual as if a judicial decree had directed it, she should not be deprived of the right to acquire an independent domicile merely because she refrained from applying for a judicial decree of separation. I will therefore find that decedent prior to her death acquired a domicile separate and apart from that of her husband, and that she was not at the time of her death domiciled in the state of New York. The appraiser will proceed in accordance with this finding. Settle order on notice.

Decreed accordingly.